Good afternoon. Illinois Appellate Court, First District Court is now in session. The Sixth Division, the Honorable Justice Sanjay T. Taylor presiding, case number 23-1679, People v. Kiana Ford. Good afternoon. My name is Sanjay Taylor. I'm the presiding justice of the Sixth Division of the First District Appellate Court. I'm joined by my colleagues, Justice Michael Hyman and Justice Celia Gamrath. If I can ask counsel to introduce themselves, and we'll start with the epilogue. And if you can let me know how much of your 20 minutes you would like to reserve for rebuttal, I would appreciate that. And then we'll ask the counsel for the state to introduce himself. So, counsel for epilogue. Justice Michael Hyman Good afternoon, Your Honors. My name is, sorry, I see a chat. Good afternoon, Your Honors. My name is Brian Cook with the Office of the State Appellate Defender on behalf of the appellant, Ms. Kiana Ford. I'll reserve two minutes for rebuttals, Your Honor.  Okay. And I see there was a message in the chat from Mr. Cordes that he didn't have audio. Justice Michael Hyman There we go. Sorry about that. My apologies. I was having a hard time. Thank you.  Good afternoon. I don't know if you heard, but Ms. counsel for epilogue introduced himself, and he's reserved two minutes for rebuttal. And if I can ask you to introduce yourself, counsel for state.  Thank you, Your Honor. Assistant State's Attorney, Justin Cordes on behalf of the people.  Okay. Thank you, Mr. Cordes. And I'm sorry, is it Coke or Coach?  It is Cook. Yeah, like in the kitchen, Your Honor.  Okay. I completely got it wrong. Okay.  It's okay. Don't worry. Mr. Cook, if you can, you may proceed. All right. Thank you, Your Honors. May it please the court, counsel. I represent the appellant, Ms. Kiana Ford. The jury in this case was presented with two competing versions of the altercation that led to Ms. Ford's conviction. And it had the job of resolving the credibility of those competing accounts to determine whether the state had proved beyond a reasonable doubt that Ms. Ford did not act in self-defense. There was, however, one independent witness, someone who was not himself involved in the altercation, who the jury could look to when determining which version of events was credible on the case. We know the facts. Okay. Let me ask, you make several arguments as to why it should be reversed to allow the statement to the officers to be presented to the trial of fact. I know you make several arguments. I'm sure you think they're all really home runs, but give me what you think is the strongest argument in your arsenal. I believe, Your Honor, that ineffective assistance is probably what affected the outcome of this trial the most. And the reason for that is that when we look at Mr. Hall's prior statements, their use as impeachment certainly would have helped the defense. But had those statements, had counsel sought to admit those statements substantively, either as prior inconsistent statements under Section 115, 10.1, or as excited utterances, their affirmative use as substantive evidence would have aided the defense far more because those prior statements as substantive evidence would have addressed two of the key things that jury had to decide, and that's who was the initial aggressor in this dispute, which we have competing accounts on that, and also who, exactly how much force was Ms. Ford faced with, which is important in determining whether her use of force was reasonable and proportionate. So I believe while both arguments merit relief, ineffective assistance is probably the area in which Ms. Ford was prejudiced the most in terms of the outcome of this trial. Now, that being said, both of these issues do share at least an initial common point, and that's whether, and this is a key part of the dispute that we have with the state, and that's whether Mr. Hall's prior statement to the police was inconsistent with his trial testimony on the point of who threw the first punch in this altercation. Mr. Cook, for purposes of your ineffective assistance claim, under the statute that you rely on, were you required to show that Mr. Hall was unavailable? That's not a requirement for either 11510.1. That's regularly used for witnesses who testify, but flip compared to their prior statements. In fact, it requires cross-examination as one of the requirements for admissibility. So that one is basically targeted at witnesses who do testify, and excited utterances are the same. They fall within, I guess, a very large group of hearsay exceptions. But excuse me, he did testify. Correct, and he was required to testify in order for his prior statements to be admissible substantively under section 11510.1, and then under the excited utterance exception, that's an exception that doesn't require availability, or I'm sorry, it doesn't require unavailability. And yes, he did testify. His testimony at trial, when he was asked by defense counsel about what he observed about the fight, he said that he did see the start of the fight. He saw both Ms. Ford and Mr. Collins throwing punches at one another. But when he was asked if Robert Collins threw the first punch, he said fairly clearly that he did not know if he threw the first punch or not. When he talked to the police shortly after the offense, he did indicate that Mr. Collins was the person who threw the first punch. He said he had heard the argument outside, he heard them carrying on outside the apartment. So he opened the door and he said he saw that they had started fighting. Mr. Cook, we've looked at that. In the real world, of course, people don't talk with the level of precision and accuracy that lawyers tend to talk, but he says he's at the door. A whole lot of stuff is going on outside his door. He opens it, look out there. They had started fighting. Apparently, this guy came out. We don't live in the building. He came out of the apartment and confronted this girl, the one hollering and screaming and accusing him at the same time. He punched her. That was the first I saw the fight. I suppose there's different sort of interpretations of that, but I think your argument, if I understand correctly, is that a fair interpretation is that the defendant threw the first punch. Is that right? That Mr. Collins threw the first punch. And you're right. Witnesses don't speak with the sort of precision that we speak with as lawyers. And I think the law does recognize that for a prior statement to be considered inconsistent with trial testimony, there doesn't have to be a direct contradiction. A witness says X, previously said not X. But it also includes things like evasive answers, changes in position. He didn't recall. He said he didn't recall in his testimony. And you're saying that the prior statement, he did recall. Well, he said in his testimony when he was asked if Robert Collins threw the first punch, he said he didn't know, which I think is basically the same thing. He didn't recall. Exactly. And a lack of memory is another of those things that can be deemed inconsistent because direct inconsistency isn't required. What he did say, your Honor's summary of his prior statement was accurate. He followed that up by saying when he said he saw Robert Collins punch Mr. Ford, which was the first he saw the fight, he said, then they got to fighting. And I think that is an important part of what he said. When we look at the entirety of what he said in its context, including the fact that he's always testified that he saw the start of the fight, I think the correct interpretation of that statement is that he did indeed see the first punch. And the person who threw that first punch was Robert Collins. That's inconsistent with his trial testimony saying that he didn't recall who threw the first punch, didn't know who threw the first punch. So your argument is, and I neglected to include that, but he did say, then they got to fighting. So your point is that Mr. Hall is testifying chronologically of what happened. Effectively, yes. And if you look at the entirety of his words and give them a natural interpretation, the judge just erred in finding that there wasn't an inconsistency between that statement and what he testified to at trial. So for that reason, this inconsistency should have at a minimum come in to impeach him, but also counsel having recognized that there was this inconsistency and having recognized in counsel's attempt to get this video statement in, I think it's clear that counsel recognized it was helpful to the defense, but what counsel failed to do was effectively use the rules of evidence to get that statement before the jury to properly argue for its submission, not just for impeachment, but also as substantive evidence that Robert Collins, by being the first to throw a punch, by being the first to use physical force in this argument, he was the initial aggressor. And obviously, the identity of the initial aggressor is a pretty crucial thing for any self-defense case. It was something that the parties offered different testimony about. Aside from Mr. Hall, there were one witness for the state and one witness for the defense who testified about that key fact. Mr. Collins testified that it was Ms. Ford and her son, contrary to what Mr. Hall says, that it was just Ms. Ford and Mr. Hall. Mr. Collins testified that the two of them followed him downstairs from the third floor. Ms. Ford was poking him in the back of the head. He turns around and her son punches him. Ms. Ford's version of events was quite different. They were exchanging words. Mr. Cook, excuse me. So, we are familiar with the testimony of trial. We've read it carefully. I have a question for you. Regardless of whether we found that the trial court erred in not allowing it in for impeachment, or if we find it's in existence, either way, Ford gets a new trial, correct? Is that the result? Yes, that's the remedy that we would be seeking for both of those issues, a remand for a new trial. And so then the testimony is going to come out if Hall is still available, Hall would testify, and it will be a new ballgame as to what Hall says at trial and whether this recorded statement comes in at all, correct? That's correct. I mean, just because he testified inconsistently with a prior statement at a first trial, if there's another trial, and he testifies again, certainly we can't guarantee that he's going to testify exactly the same way. However, the other thing I would say is that even if like leaving aside whether his prior statement was inconsistent with his trial testimony, there would be another basis for admission that wouldn't vary from the first trial to a potential new trial. And that's whether his statement was admissible in his entire statement, including the inconsistent portions, and other portions would have been admissible as an excited utterance. Because there was another portion of his statement where he describes the manner in which he saw Robert Collins striking my client, Ms. Ford. He describes him as beating her like a dog, giving her- But those statements were made a half hour after the incident, at least, right? I don't- Even if it's 20 minutes, an excited utterance is, my understanding of reading over the cases again, and this comes up, that's a long time for an excited utterance. And he wasn't even, you know, he's just watching that. How is that excited? Well, I guess I would make a few points, Your Honors. As far as the timeline, we know that from the body-worn cameras, we have officers initially arriving at, I believe, 3.38 p.m. And by about four o'clock, Ms. Ford has been arrested, she's being transported. His statement was made around 3.42 is when that started. So we have just a few minutes after police arrived, he's giving the statement. And we also, even though we don't know exactly how much time passed between the actual fight and when police arrived, I think it's pretty clear from context that it happened very quickly. We know that one witness, the state's witness, Mr. Thomas, went outside afterwards, flagged down a sheriff's deputy. We know several other witnesses, including Mr. Hall, were calling the police. So this was a pretty quick response. So I think it's probably more likely that it's less than 20 minutes between the fight and when he's giving the statement. And I think that's in line with a lot of excited utterance case laws. Sometimes it's shorter than that. Sometimes it's significantly longer than that, depending on the circumstances. And you have to look at the totality of the circumstances to make that determination. And here, and I think the key thing you're looking at is whether the excitement of the was still predominating such that the witness didn't have the time or motivation to reflect and fabricate an account. And here we have a witness who, because he's independent, he had no motivation to lie pretty much anyway. His relationship to everyone involved in this was just as their landlord. He didn't have a reason to shift blame to one side or the other. And the police were questioning him in a way that was very neutral and open-ended, just trying to find out what happened. There was no pressure in the questions and the way he was being questioned to implicate one side or the other. He wasn't being led or anything like that. And I would also point out, this is a man who was, this occurred in a very small space. He's in an unoccupied apartment right outside this landing. He certainly felt under threat. After the fight started, he locks himself in. He's got to hold the door shut. Mr. Cook, excuse me. Mr. Cook, that's all a great argument for the trial court, but that was not made at the trial court at all. So this juncture you're asking is to find ineffective because as a matter of law, it falls within that hearsay exception. Don't you think that that's a caution if this case goes back down for revamp for a new trial for defense counsel to raise in front of the court at that moment? Well, if it goes back down on other, on another basis, I certainly would hope that defense counsel would seek its admission, but the record still exists before this court about the factors that are relevant to whether something is admissible as an excited utterance. And the question is, is there a reasonable probability that there would have been a different outcome had counsel sought the admission of the statement on that basis? And because there is a strong basis for finding that this was an excited utterance and because that prior statement would have helped the defense position on some of the key disputes in this case, I do believe that there's a reasonable probability of a different outcome had counsel sought its admission on that basis, even though we don't have a ruling by the trial judge to review on that specific issue. I just want to just follow up on a question that just as camera asked you and put aside for a moment, the excited utterance argument and also put aside the strength of the arguments under the hearsay exception and section 115-10.1. If I understand your position correctly, you're asking this court to find ineffective assistance of counsel under, for failure to advance a section 115-10.1 argument, but that if we disagree with you there, then your fallback position is that the trial court erred by not admitting the statement, the videotaped statement as a prior and consistent statement. Right, I mean, I think those are both alternatives to one another. Right, but there's a difference there, right? I mean, your argument is that it comes in under section 115-10.1 as substantive evidence. Now, of course, that's all going to, you know, actually happens at retrial, we don't know. Okay, so I just want to make sure I'm understanding this correctly, correct? So, to put a period on it, what you're saying is that we could rule in your favor just on the first issue you raised, but we could also rule in your favor on the first issue and the second issue or third, or just on the second and third. Is that the gamut? I think that's correct, your honor. So, my question, I guess, the first issue, if we didn't rule in your favor on that one, you still have the other argument. So, that's your position. That's correct. So, right, if you agree with us on the first issue, you could remand for new trial, no need to address ineffective system counsel. If you disagree on the first issue. You will duplicate caboodle, which is the ineffective assistance claim, because that gets you the evidence that you're seeking substantively for the truth of the matter asserted. Certainly. I think a ruling on the second issue would, depending on how the testimony would play out at a retrial, would possibly require the substantive admission, depending on the language of this court's order. So, yes, which issues this court decides, if it chooses to remand, might affect how that retrial plays out. I guess, am I understanding your question, your honor? I think so, but let me go back to my question. Are you asking this court to decide as a matter of law that this was an excited utterance, even though the issue was not raised on appeal? We don't have an argument about plain error. You base it in the context of ineffective assistance. And my understanding of hearsay and the rules of evidence is that generally that's a question of fact, and it's within the discretion of the trial court. Here, the trial court did not get the opportunity to even decide that issue. So, aren't you sort of skipping a step by asking us to rule on that substantively? Well, I think the step was skipped by counsel. A criminal defendant does have the right to the effective assistance of counsel, and that includes kind of as we cite in our brief, counsel has an obligation to use the rules of evidence when they are to their client's advantage to seek the admission of helpful evidence. And when they don't, it's ineffective assistance. It doesn't mean that you as an appellate attorney get to skip all those steps and say that was wrong, that was wrong, that was wrong, even though it wasn't preserved. If it wasn't preserved, sometimes we see issues of plain error. I don't see that in your brief. I see it in the context of ineffective assistance. Right. And the reason for that is because defense counsel never sought a ruling on this issue by the trial judge, the natural fit for that is that counsel was ineffective. And there's a reasonable probability that this evidence would have come in as an excited utterance had counsel sought its admission on that basis. And there's also a reasonable probability that the outcome of trial would have been different if counsel had done so. I guess ultimately our argument is that because counsel made these errors and didn't use the rules of evidence effectively, Ms. Ford wasn't given a fully fair trial before a jury that had all of the relevant evidence on behalf of the defense. And so the outcome of this trial isn't worthy of confidence kind of as they state in ineffective assistance case law. So therefore she should get Thank you. Your time is up. All right. Thank you. Mr. Cordis. Thank you, your honors. Good afternoon. May it please the court. My name is Justin Cordis, assistant state's attorney on behalf of people. First, one thing that I would like to point out during the question for questioning of counsel, your honors, is I'd like to take us back to the statement during Mr. Hall's testimony, where he says specifically, I don't know. So in response to counsel's question, and he threw the punch, correct? Mr. Hall states, I don't know if he threw the first punch, but I know that they were fighting. Now that's not a statement of a witness who is incapable of recalling. That's a statement from a witness stating specifically that he does not have the whether or not someone threw the first punch. That's an argument you're making. Isn't that something that should go to the jury to let them determine that particularly here where the statement he made appears to be quite contrary to what came out at the trial. I know. I know, your honor. And specifically what it is that is occurring here is something that's beyond what is required by the rules. Specifically, the court is the one that is the gatekeeper and the determiner. And so in abuse of discretion, the court misremembered what the basis was of the examination of Hall. Well, you say he does. But when you look at the statement and you compare it to the testimony, he was saying it was just had to do with the questioning by the officers. That's not really what we're talking about in this case. No, your honor. No, that's not the case. The court clearly states specifically that Hall stated that testified that he that Collins punched the defendant. That was that was what was at an issue. There's there was again, that's your argument based on your interpretation of the But there are other interpretations, particularly when you look at how much detail compared to what he trial and testimony compared to the statement. A lot more detail what happened in a chronological order. Well, so your honor, first, it's not any sort of interpretation. That was the testimony of the witness. And the trial court had the benefit of being present when that testimony was given, observing the testimony from the witness on the stand and could make that determination. The it's within. So you say this is that the statement has nothing to do with impeachment, right? Is that your position? This is this can't be used for impeachment because. I'm not saying no. So what I'm saying, your honor, is not the statement can't be used for impeachment. I'm saying it's not impeaching. You're saying it's not impeaching. Yes, the there is. There is no impeachment here. There is no conflicting statement here. Doesn't necessarily have to be. One person says orange and one person says purple. I understand that your honor, but I mean, that's that is a determination that is supposed to be specifically made by the trial court. The trial court saw the video. The trial court heard the testimony from the witnesses and specifically made the determination that it was not impeaching based on what Hall testified to. Hall clearly testified that there was. The court is assuming that it's assumed that you're correct. It's not inability to be called as you just targeted. But isn't it a change in position because this testimony or he says that I don't know if he threw the first punch and then looking at his statement on the video tape. Isn't a fair reading of that statement that he did throw the first punch? No, your honor, I do not believe that at all. Let me just read it to you just like I read it to Mr. Cook. He talks about what happened. He's at the door. Here's commotion. He opens it. When I looked out there, they had started. They had started fighting. Apparently, this guy came out. Don't live in this building. He came out of the apartment in front of this girl, the one hollering and screaming, accusing him the same time he punched her. That was the first I saw the fight. Then they got to fighting. So that sounds like a chronological statement in chronological order. And so if I may, your honor, in that statement, he's specifically saying he was not in the hallway when this was all going on. So there's no way that he could have seen the defendant and the victim first, the initiation of the action. He's in that apartment, working on that apartment, fixing something. And then he hears the commotion. That might be one interpretation that you can argue to the jury. But isn't a fair interpretation the one that the defendants are arguing here? No, it is not, your honor. And it's because of the fact that when he is asked by the officer, he clearly states that he was inside that apartment and had to actually open the door. And this was predating the commotion and the things that he heard were occurring outside. He doesn't know if there was already punching that was occurring before he opens that door. That commotion, he leaves what he's doing, working on something, opens that door, and says the first that he saw the fight was Collins punching the defendant. That is not the same thing as saying I saw the victim throw the first punch at the defendant. All right, Mr. Cordes, let me ask you this. What about the statement at trial where counsel says, did you see this man punch Ford? And Hall responds, I don't know whether he punched her, but his fists were going like that. And then he waved his fists. That is seemingly different from what's on the body cam that says Hall saw Collins beating Ford like a dog. Well, and so that's something, your honor. We don't know the veracity, not the veracity, the intensity of which he was throwing his fists inside the jury or the witness box. He could have been going like this, and we have no idea. The trial court does specifically state, um, indicating with both hands a clenched fist and a pumping motion. So he could have been throwing his fists extremely vigorously in that jury box. That's something that this court has no, no knowledge of based on the cold record. That was something that the court saw, the trial court saw during the course of the trial. He was capable of making that analysis. Hall says at trial, I don't know whether he punched her, period. It's not punched her first. The question is, did you see this man punch Ford? Answer, I don't know whether he punched her. That is very different from what he told the officer about the fact that Collins actually punched Ford and they got to fighting. And in fact, the man was giving the woman all he could give her and beating the woman like she was a dog. Isn't that inconsistent? No, because further up in the testimony, the, during cross-examination, did you tell the detectives you saw a man throw a punch and then you retreated back into your apartment? Yes, sir. That was his response to that question from defense counsel. So he specifically does state that Collins punched. That's a different question. That's a different question from what judge this, uh, camera is asking, you know, that, that he, he did at the end there, he went back into his apartment and they, he says he was beating her like a dog and he went back in apartment cause he called the police. And I'm trying to say what your question is. Well, my question is, uh, it doesn't seem to be consistent with what the, the, uh, the answers in this statement versus his testimony. And you're pulling things out from his testimony to say, oh, well, you know, he was very consistent. I, I just, I think that ignores a, uh, an interpretation of a testimony of an individual who's, who's, uh, uh, description, uh, isn't as, uh, precise as you might try to interpret it. And that's a question for the jury. They should have, it gives you a much different impression. You don't think that that would have any influence on the jury that, uh, he says they were fighting so hard. The man was giving the woman all he could give her. He never says that he, she gave him anything. You're right. So that, so the issue there is, is it's based on whatever questions he was asked. He was not asked regarding whether or not he was beating her like a dog or giving her all he can that those questions weren't asked. It's not impeaching. You're taking statements that were made during the course of the video and trying to interject them for, for the witness failing to make those statements during the course of testimony. This is not impeaching. You're forgetting the context. The judge did not allow the sound. Right. He didn't allow the sound. That's what we're trying to allow. No, that's the issue. Issue is, should they have heard the sound, the statement? It was not in. That's why we're here. Well, your honor, the issue is, and this is specifically what we're doing now. We're trying to take this away from the trial court. It is the trial courts within the province of the trial court to make this determination. And it's not an abuse of discretion here because a reasonable person hearing these things would make the determination that these are not. Hearing what things, hearing what things? Hearing the testimony of the witness and compared with asking whether or not the Collins punched the defendant. The judge would not allow in the sound. The objection was made, I want to have the sound. If that didn't happen, we may not be here. The lawyer said, judge, I need that sound. That's not what he said. He specifically said that what he wanted to impeach him with was whether or not Collins punched the defendant. The court stated that Paul testified that Collins punched the defendant. That was the testimony. The request was he wanted, he believed the video impeached that statement. The court said that he testified as such and therefore it was not impeaching and it was an admissible hearsay. Didn't the judge though characterize it as all not knowing whether that punch landed or not? And again, if the judge is characterizing the testimony as Paul saying I don't know if that landed, that seems to be inconsistent with what Paul told the police on the day of the incident. I, so your honor, he says that they are, he says that they're fighting. I don't understand, there's not necessarily a discrepancy in the testimony from the witness and that video. He says that he threw, he threw the punch. He said that he saw that the Collins punched the defendant and even goes so far as to demonstrate for the jury what Collins was doing to the defendant. I mean, Paul wasn't necessarily in the fight. I mean, but he testified as to what he saw. Well, that's not true because the judge said, I'm quoting the judge, he does not know if it landed, we're talking about a punch or what was going on. We do know Paul said the man was giving the woman all he could give. The guy right here was beating the woman like she was a dog. Again, judge says he doesn't know if it landed. Well, how can you say he doesn't know if it landed when the statement says he was beating her like a dog? Isn't that inconsistent? But your honor, first of all, that statement, he was beating her like a dog, isn't, I would argue, the statement is not impeaching. The issue was whether or not the judge said he doesn't know if it landed. He does know it landed. He was beating her like a dog. Your honor, in this case, he wasn't necessarily in the fight. Who? Hall. Hall didn't see this? No, I'm not. That's not what I'm saying. He wasn't our participant in the fight. He wasn't. That's right. That's right. He's a, he's one of the few people in this case that had didn't have a dog in the fight, so to speak, and where everybody else has all sorts of problems with their testimony. Right. So which created a lot. I would just, I would dispute that as well. You know, the defendant and the defendant and her son are the ones that were lying about the ways in which you might say that. But if I understand you're doing it as a attorney for the state, but if you look at the testimony on both sides, a lot of inconsistency by the witnesses for the state, who was, when he was outside, why Thomas ran, the person with a stick and so forth, who that was, who was in the hallway, lots of inconsistencies going on. And we do know one thing at the very minimum is four to two, four people beating up two. And mostly it was the person getting hit the most was, is Ford. So. Well, if that's the case, your honor, Ford didn't have any apparent injuries afterwards. She was the only one that had splashes on her. She didn't have any marks on her arms. That was an argument made by the state of trial. Yes. I mean, there were photographs, your honor. She testified differently, didn't she? But the photographs would bear it out. Photographs don't show necessarily everything. She said she had two black eyes. You think photographs by the police are, are they like professional? I mean, that's a value judgment. And the argument was made by the state that, that would have showed. So, but that's, there is a contrary testimony and that's the important point. Well, so your honor, moving on, even if in this case you were to find that the court abused its discretion, the error was harmless. Specifically, the error did not contribute to the conviction. Again, Hall did not see the inception of the fight. While counsel claimed that Hall did minor discrepancies in testimony of an eyewitness do not destroy his credibility. And moreover, the jury was present during the course of the testimony and counsel, the waiver was present during the course of Hall's testimony and the jury could make, could make a credibility determination based on that. Now, furthermore, defendants acts as aggressor in this. Defendant's behavior prior to the fight, her screaming, yelling, pounding on doors, accusing people of stealing packages. We know that this occurred because of the fact that Hall testified to it and said that he had to come out and calm her down. That's not what we're talking about. We're talking about a fight. Okay. The important thing, people can do that. People do that all the time. Okay. The question here, if there was no bodily contact, it's a different situation, right? So, but here what you're talking about, she was found guilty of was with regard to this fight, right? It wasn't the hollering and screaming. So let's get down to what the issue was. And the issue of the fight goes to the statement. Correct your honor. And the statement that the defendant or that Collins punched the defendant was testified at trial by hall. He stated that Collins punched the defendant and that's the issue. If I say that, um, a punched B and I say that a punched B like a dog, are those equivalent? Your honor hall was not asked whether or not a punched B like a dog. He was asked whether or not he wanted to get the testimony. He couldn't recall very well. And he had this statement. It was taken down within less than 20 minutes, according to Hansel, uh, by the police officers. And that's where it came out. What came out of testimony was that Collins punched the defendant. And that was what was at issue during the course of the trial. During his testimony, that statement came out. The statement in the video was not impeaching. It's not as though the, um, specifically it's a question for the trial court. The trial court observed that video, observed the testimony of hall on that stand and made the appropriate decision that the statements were not impeached by that video. And this is something that should be. Let me just go back. I think that what Justice Hyman is getting at is the statement of law that says inconsistencies may include a evasive answer, change in position, silence, inability to recall, an omission of significant matter. The idea that somebody says B like a dog seems pretty significant when you're determining who starts a fight or who's engaged in the fight. So you're honing in on the fact that nobody asked about beating like a dog. However, nobody had to under the black letter law for inconsistent statements because that's seemingly a significant omission. You're on a, uh, it's not an omission. If you were to ask somebody, if someone hits someone else, it's if the question was how vigorously was, uh, Collins punching the defendant, that was not the question. All he asked, he was trying to get at whether or not he saw Collins through the first punch. That's what's at issue here. And he specifically says he doesn't know if Collins through the first punch. Now. Okay. We're going to move on. You only have a couple more minutes, but I just want to reiterate, Paul says, I don't know whether he punched her. That's what he says. Not first, not second, punched her. So do you have anything to say about the idea of this, um, excited utterance or the rule of ethics? Yes, your honor. So first of all, that's your time, but you could answer that question. Okay. So first of all, with regard to whether or not, um, counsel is ineffective, uh, for, uh, for failing to attempt to admit the statement through 1 15 10. He attempted multiple times to admit it, uh, first through, uh, the people's case in chief, and then also through his own case in chief. When he was attempting to try to get hall to come in and testify, the court said that it would, it found that that video wasn't necessarily impeaching. Uh, moreover, uh, counsel is not required to make feudal motions, objections, or arguments to provide ineffective, uh, to provide, uh, to provide evidence that were was already prior prior ruled on by the trial court. And then, moreover, with regard, uh, Justice Gamerath, you are correct in your distinction where not only must counsel show that, uh, not only must defendants show that counsel was, uh, ineffective, uh, for failing to attempt to admit the statement under the course of, uh, excited utterance, but they must show that the court, the trial court would have held that that had missed that evidence was admissible under the hearsay exception here. This hearsay exception with regard to the excited utterance. This is not an excited utterance because number one, this occurred a significant period of time after the, uh, fight had ended. It ended because of the fact that hall stated that he was going to call the police. It, the first officer I'm seeing was not the on scene and, uh, in addition to him arriving on scene, defendant was already outside of the building. He had been on scene for over four minutes by the time that he talked to hall at that time. And then during the course of their conversation, uh, uh, Miras, who was the officer that spoke with hall, proceeded to ask him at least 10 questions from what I could count from the video, uh, during the course of his statement, which would destroy, uh, the, uh, excitement or the excited utterance, uh, uh, requirements. It's a totality of the circumstances. So the length and time between, uh, the, uh, the event and his statements to police, the fact that he was asked numerous questions by the officer destroyed that excitement. Uh, and so all of those reasons as well, uh, demonstrate that, um, uh, there was no, the, uh, the hearsay exception did not apply in this case. Um, your honor, I w I would argue as I had stated in, uh, was attempting to discuss, but, uh, that this error was harmless because of the fact that, um, here, uh, the evidence was presented at trial. Overwhelmingly established defendant was the initial aggressor. Testimony of the defendant and son were not credible and defendant did not act out of self-defense as the victim was being held and restrained on the ground and proceeded to cut him with a knife while he was being restrained. Uh, furthermore, um, uh, defendant, uh, defendants after having to be restrained by police as the victims were leaving, uh, that they, she tried to kill them, that they were trying to lock her up because she cut them. She cut everybody. She used her blade the way it was supposed to be used. Statements after the fact and her actions after the fact demonstrated, um, uh, the defendant was the initial aggressor. And if not necessarily the initial aggressor defendant continued to stab the victims, uh, after, uh, at least Collins continued to stab Collins with a box cutter after he was already subdued by her son and being held, uh, on the ground. So, uh, your honors, um, thank you, Mr. Cordis for these reasons. And those students are brief. We asked this court affirmed defense conviction for aggravated battery with the deadly weapon. Mr. Cook, you have two minutes. Thank you, your honor. Excuse me. I'll, I'll be brief. Um, I think in my initial argument, I addressed most of the points that I would want to make. Um, but I would like to address the state's harmless error argument briefly. And this has focused on perceived weaknesses, the defense case, but there were also some significant weaknesses in the state's case. Their key witness was Robert Collins and his testimony just internally. The state's case was inconsistent about who was present at the start of the fight. Robert Collins said that it was both Ford and Jawan Thomas with Jawan Thomas being the one to throw the first punch. Whereas another state's witness, Mr. Hall said that it was just miss Ford and Mr. Collins. And he saw the start of the fight. He never saw Mr. Thomas. So that's one piece of impeachment of Robert Collins. The state, um, also doesn't acknowledge that, uh, the defense was allowed to present Lynch evidence about Mr. Collins. He had a prior incident of aggravated assault that was admitted as evidence that further calls into question his testimony. And he was also impeached by a more recent conviction for gun possession. Um, and finally, I think just as Simon referred to this, another state's witness, Mr. Thomas, um, was impeached by a sheriff's deputy about the accidents that occurred afterwards. Mr. Thomas said that he fled from the scene because a woman with a knife and a crutch, presumably a defendant was chasing him, but the officer who was present that interaction did not observe those things. Um, so that's a meaningful bit of impeachment of Mr. Thomas. So for those reasons, response to, uh, the statements by counsel that, uh, by Ms. Ford at the time afterwards, when she was being arrested. Certainly. And I think on the surface, those look quite bad, but we have to keep in mind that even under Ms. Ford's account, she had just experienced what would be an exceptionally traumatic experience where she had to defend herself. And I don't think it's at all unreasonable to think someone minutes after that having happened, if they had to act and they really thought that they needed to act to defend themselves from serious harm, that they would be angry and yelling. I don't think that's an unreasonable response. And at best, it provides some circumstantial evidence for the state's case, but there are also alternative explanations for how she was acting afterwards that are fully consistent with self defense. That should be something for the jury to decide. It's certainly not overwhelming evidence that Ms. Ford's behavior after this happened proves that she absolutely did not act in self defense. Uh, the jury should have been able to make that determination after hearing Mr. Hall's prior inconsistent statements that the judge, uh, abused his discretion by not admitting. So for those we would ask this court to reverse Ms. Ford's convictions and remand for a new trial. Thank you, Your Honors. Okay. Thank you, Mr. Cook and Mr. Cordes for your excellent advocacy this afternoon. The case is submitted. The court will issue a ruling in due course.